AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Sebastian Fajardo Piedrahita | ) | 20-mj-6084-VALLE |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 19, 2020__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952(a) | Importation of a controlled substance. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Christina Feo Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/19/2020

_____
Judge's signature

City and state: Fort Lauderdale, Florida

Hon. Alicia Valle U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christina Feo, being duly sworn, do hereby depose and state:

1. I am a Special Agent employed with U.S. Department of Homeland Security, Homeland Security Investigations (HSI) in Fort Lauderdale, Florida, and have been so employed since May 2019. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 18 and 21 of the United States Code. As a Special Agent, my duties include the investigation of customs and immigration laws, including the investigation of narcotics entering the United States.

2. The facts contained in this Affidavit are based on my personal knowledge and information provided to me by other law enforcement officers. This Affidavit is being submitted for the limited purpose of establishing probable cause that Sebastian Fajardo PIEDRAHITA ("PIEDRAHITA"): (1) did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, five hundred (500) grams or more of a mixture and substance containing a detectible amount of ketamine, in violation of Title 21, United States Code, Section 952(a). The facts set forth herein do not constitute all the facts known to law enforcement officers regarding this matter. However, no information known that would tend to negate probable cause has been withheld from this Affidavit.

3. On February 18, 2020, PIEDRAHITA, a citizen of the United States, but who currently resides in Bogota, Columbia, arrived in the United States at approximately 1245 p.m., on

Colombia
CMF

1

Avianca Flight #36 at the Fort Lauderdale/Hollywood International Airport (FLL), from Bogota, Colombia.

4. After PIEDRAHITA arrived at FLL, U.S. Customs and Border Protection (CBP) selected PIEDRAHITA for secondary inspection, and asked PIEDRAHITA if the suitcase he was carrying belonged to him, and if he had packed it himself. PIEDRAHITA responded that the suitcase was his and he had packed it himself. A CBP officer removed the contents from the suitcase, but detected that the suitcase remained somewhat heavy, and placed the suitcase on the x-ray belt for an examination. During the inspection, CBP officers discovered an anomaly within the suitcase. CBP officers then probed the side of the suitcase and discovered a pink powdery substance towards the back of the suitcase. A CBP officer placed PIEDRAHITA in handcuffs and escorted him to a secure holding cell for detention. While in the holding cell, PIEDRAHITA spontaneously stated that a girl named "Karly, tricked him into taking the luggage," and he did not know what was in the suitcase.

5. A CBP officer discovered two powdery substances within the frame of the suitcase: (1) a pink powdery substance, and (2) a yellow powdery substance. A CBP officer utilized a substance-testing device known as the "Gemini" to test the pink powdery substance and the yellow powdery substance. Both of the substances field-tested positive for the presence of ketamine. The total weight of the pink powdery substance was 1.66 kilograms, and the total weight of the yellow powdery substance was .28 kilograms, for a total weight of 1.94 kilograms.

6. HSI agents and HSI Task Force Officers (TFO) officers read PIEDRAHITA his Miranda rights, which he waived. PIEDRAHITA told law enforcement that he met a Venezuelan woman named Karly, approximately one year ago, in Jersey City, New Jersey, and she purchased his

roundtrip airline ticket from Bogota, Columbia to Fort Lauderdale. [handwritten: Colombia Calif] PIEDRAHITA said Karly asked him to bring a suitcase from Colombia to Fort Lauderdale, filled with medicine, bathing suits, and shampoo bottles, and in exchange, Karly would compensate him. However, PIEDRAHITA could not advise law enforcement how much money he would receive in compensation. PIEDRAHITA said a stranger, named Paola and/or her husband, dropped off the suitcase at PIEDRAHITA aunt's house, at an unknown address in Cali, Colombia. Then, as directed by Karly, PIEDRAHITA brought the suitcase to the airport in Columbia, and he boarded the flight to Fort Lauderdale.

7. PIEDRAHITA consented to the search of his cellular telephone. Inside his cellular telephone, law enforcement saw a picture of what appeared to be a similar pink powdery substance located inside his suitcase. PIEDRAHITA claimed that he uses the pink powdery substance for personal consumption, but PIEDRAHITA continued to deny that he had knowledge of the pink powdery substance in his suitcase.

8. PIEDRAHITA agreed to cooperate with HSI special agents and he made several consensually recorded telephone calls and exchanged text messages with Karly, where she could be heard complaining about purchasing an Uber and airline ticket for PIEDRAHITA, and asking his whereabouts.

9. At 5:15 p.m., Karly called PIEDRAHITA to let him know she arrived at FLL, and was at the arrivals in terminal four. Law enforcement conducted surveillance, and observed Karly exit a white Hyundai that was occupied by three other passengers. The Hyundai continued to drive on after she exited the vehicle. Karly was subsequently taken into custody.

10. After being issued her *Miranda* warnings and waiving her rights, Karly was interviewed, and stated she did not purchase the airline ticket for PIEDRAHITA and she did not provide him with the suitcase.

11. At approximately 5:25 p.m., law enforcement observed Ajejandro Ibañez Londoño exited the Hyundai from the front passenger seat outside the arrivals at terminal four. Law enforcement took Londoño into custody and simultaneously stopped the Hyundai. Law enforcement ordered the driver, Jorge Quintero, and the other rear passenger, Mariana Vargas-Jimenez, to exit the Hyundai.

12. Subsequently, a HSI K9 alerted to the presence of narcotics inside the Hyundai. In plain view, in the front passenger seat, where Londoño [Ibanez CMF] was sitting, law enforcement observed a small amount of pink powdery substance that appeared to resemble the pink powdery substance found inside the suitcase.[1] The pink powdery substance was field tested and showed positive results for the presence of ketamine. Additionally, law enforcement noticed a fanny pack on the front passenger side seat. Law enforcement opened up the fanny pack and found approximately $2,300 in cash and IBANEZ's [Londoño CMF] Passport.

13. After law enforcement's search of the Hyundai, Quintero, Vargas-Jimenez and Londoño [Ibanez CMF] were detained and brought to the CBP interview area.

14. Vargas-Jimenez waived her *Miranda* rights and agreed to speak to law enforcement. Vargas-Jimenez claimed ownership of a backpack recovered from inside the rear passenger side of the car. Vargas-Jimenez said she got scared and placed a digital scale in her backpack. The digital

---

[1] Law enforcement also discovered four pills that later field tested positive for Xanax.

4

scale had pink powdery residue consistent with the drugs found in the PIEDRAHITA's suitcase. Vargas-Jimenez admitted she was a user of ketamine.

15. Law enforcement noticed a similar pink powdery substance discharging from Londoño's nostrils. For health and safety reasons, law enforcement asked Londoño if he inhaled any drugs. Londoño admitted that he inhaled an unknown amount ketamine earlier in the day. Londoño was transported to Broward General Hospital.

[handwritten annotations: → Ibarez CMF (multiple times, pointing to "Londoño")]

16. At around 8:50 p.m., Broward General discharged Londoño and he was transported back to FLL. Once Londoño returned, he was arrested and read his *Miranda* rights, but he declined to speak with law enforcement.

17. Based upon the foregoing, I submit that there is probable cause to believe that PIEDRAHITA: (1) did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, five hundred (500) grams or more of a mixture and substance containing a detectable amount of ketamine, in violation of Title 21, United States Code, Section 952(a).

FURTHER AFFIANT SAYETH NAUGHT

_____
Christina Feo, Special Agent
Immigration & Customs Enforcement
Homeland Security Investigations

Subscribed to and sworn before me
This 19th day of February, 2020

_____
HON. ALICIA VALLE
UNITED STATES MAGISTRATE JUDGE